YATES, Guardian, Appellant, vs. WEINHARDT and others, Respondents.

*March 11—April 7, 1937.*

*Tom L. Yates* of Amery, for the appellant.

For the respondents there was a brief by *Howard D. Blanding* of St. Croix Falls, attorney for Emma Weinhardt, Ruth Carlson, Violet Johnson, Marion Hendrickson, and Charles J. Buss, and by *G. P. Gannon* of Rice Lake, attorney for the Federal Farm Mortgage Corporation, and *John Thorpe, Harold W. Lee,* and *Michael A. Schmitt,* all of St. Paul, Minnesota, of counsel, and oral argument by *Mr. Blanding* and *Mr. Schmitt.*

NELSON, J.   The facts found by the court, and which are supported by the evidence, will be briefly summarized.   Some time prior to September 29, 1916, one Andrew W. Lindberg died seized of the north half of the southwest quarter of sec-

tion 11, township 33 north of range 18 west, situated in Polk county, Wisconsin. He left surviving him Johanna Lindberg, his widow, Leander Lindberg, Maynard Lindberg, Enoch Lindberg, Hilda Kroon, and Ellen Hendrickson, sons and daughters, as his heirs at law. On September 19, 1916, Leander Lindberg purchased from his brothers and sisters their interests in said lands, paying to each of them, including Enoch Lindberg, the plaintiff's incompetent, the sum of $875. On the same day Leander Lindberg entered into a contract with his mother, the said Johanna Lindberg, and his brother, the said Enoch Lindberg, wherein it was recited that the latter persons had deeded the former all their interest in said lands, the consideration thereof being the covenant, promise, and agreement of Leander Lindberg "to care for, board and clothe said second parties during the balance of their natural lives, *to furnish such board and clothing at the home of the first party,* good comfortable and suitable board and clothing, fit for their health and condition of life, also to provide each of them during life with sufficient medical care and attention and medicines, and after death to furnish for each of them a good Christian burial." The agreement further provided:

"The performance of the conditions of this agreement shall be a lien upon the above-described land until the above conditions are fully and faithfully performed."

Enoch Lindberg was mentally subnormal and of a roving disposition, but capable, however, of earning wages in performing farm labor. Johanna Lindberg continued to reside on the farm purchased by Leander Lindberg until her death, which occurred on June 28, 1920. She was suitably supported by Leander and given a "good Christian burial." Subsequent to September 29, 1916, Enoch did not continuously live at Leander's home. Up until April, 1922, when he was committed by the county court of Polk county to the North-

ern Colony and Training School at Chippewa Falls as a feeble-minded person, he worked for certain farmers in the neighborhood, and while so employed resided with them. When not so employed, he lived either with Leander or his sisters, Mrs. Hendrickson and Mrs. Kroon. After being committed to the Northern Colony and Training School, he remained there most of the time up to the year 1933. Leander always furnished Enoch with board at the former's home whenever Enoch returned to it. Enoch and Leander were apparently friendly, and Leander was apparently willing to furnish board to Enoch at the former's home whenever the latter desired to stay there. At all times subsequent to September 29, 1916, Enoch was under guardianship. His guardians, prior to his being committed to the Northern Colony, had considerable trouble in keeping track of him. Up to the time that Enoch was committed to the Northern Colony he seems to have been fully self-supporting, and to have asked Leander for nothing except occasional support at the latter's home. On March 22, 1924, the plaintiff was appointed Enoch's guardian. The guardianship funds turned over to him amounted to about $1,500. Commencing in 1924, and continuing down to 1933, the plaintiff, from time to time, paid out of the funds in his hands, principally to Mrs. Kroon, apparently to reimburse her for supplies furnished by her to Enoch, amounts totaling $280.28, and also paid to Polk county the sum of $1,251.23, to reimburse it for moneys paid out by it for the care and support of Enoch while committed to the Northern Colony. On July 2, 1934, Leander executed and delivered a note and mortgage to the land bank commissioner at St. Paul, which such mortgage, though taken in the name of said commissioner, was the property of the defendant Federal Farm Mortgage Corporation. On November 12, 1934, Leander died intestate leaving him surviving four daughters, the defendants Emma Weinhardt, Ruth Carlson,

Violet Johnson, and Marion Hendrickson, and five grand-children, Harry Lindberg, Laurel Lindberg, Virgil Lindberg, and Ethel Lindberg, children of a deceased son, Russell Lindberg. The plaintiff, as guardian, apparently did not discover until shortly prior to the commencement of this action that the support contract hereinbefore mentioned was in existence, although the contract was received for record and recorded in the office of the register of deeds of Polk county on October 3, 1916, in book 84, page 264.

The trial court, after carefully construing the terms of the contract in connection with the surrounding circumstances, was of the opinion that the contract, as drawn, required Leander to care for, clothe, and provide medical treatment for Enoch only at the former's home, and that Leander was under no obligation to furnish board, clothes, or medical treatment at any other place. The court, in its opinion states:

"By the agreement Leander limits his obligation to be performed at a definite place, where he could perform the terms of the agreement at a minimum of cost and with the least inconvenience to himself. He did not obligate himself to pay for Enoch's care, room and board at any place that Enoch might choose to go, nor to seek out Enoch at any other place to provide him with clothes and medical attention. If Enoch went to Leander's home and asked him to be furnished with clothing, it was doubtless Leander's duty to provide him with what clothing he actually needed, and if Enoch was sick and came to Leander's home, it was Leander's duty to furnish him with medical care there, but not at any other place."

Construing the terms of the contract, which are not clear and unambiguous, in connection with the surrounding circumstances, we are of the opinion that the county court was right in so far as it held that Leander's agreement was to furnish board and clothing to Enoch only at Leander's home, but that it was wrong in holding that Leander was obligated to furnish medical care and attention only at Leander's home.

The language : "Also to provide each of them during life with sufficient medical care and attention and medicines, and after death to furnish for each of them a good Christian burial," is not limited as is the language of the contract relating to care, board, and clothes which were to be furnished at the home of the first party.

From the surrounding circumstances which existed at the time the contract was entered into, it reasonably appears that Johanna Lindberg, the widow, desired to remain on the farm and to be furnished with board and clothing during the remainder of her life. As a mother who was thoroughly familiar with Enoch's mental condition and his roving disposition, who knew that he would never marry or establish a home of his own, and who knew that he was then able to work and support himself, she was anxious that he might have a home with Leander in case he desired it. It was no doubt supposed that Leander would survive both his mother and his semi-incompetent brother.

Although Enoch was paid his full share for his interest in the farm, Leander was willing to care for, board, and clothe Enoch at his home so long as he had a home. When he died and no longer had a home, his obligation to furnish board and clothes at his home ceased, as found by the court. In our opinion, that is a fair construction of the contract, considered in the light of the surrounding circumstances. However, as to the medical care and attention, medicines, and the furnishing of a good Christian burial, we think otherwise. The consideration given by the mother included her homestead interest and dower estate in the lands. At that time the homestead right which descended to a widow was limited to her widowhood, sec. 2271 (2), Stats. 1915, and her dower interest to a life estate. Sec. 2159, Stats. 1915. The consideration, however, paid to Leander by her was sufficient to support the contract for the benefit of her son Enoch, a third

party. *Tweeddale v. Tweeddale,* 116 Wis. 517, 93 N. W. 440, and subsequent cases.

Since Leander is dead, his obligation to furnish board and clothing to Enoch at his home has ceased. The obligation, however, to provide Enoch with sufficient medical care and attention and medicines and with a good Christian burial (obviously an obligation to pay his reasonable funeral expenses), cannot be held to have ceased upon the death of Leander.

There is nothing in the proof offered by the plaintiff to show that any of the disbursements made by him were for medical care or medicines reasonably required by Enoch, so the action commenced for the primary purpose of having determined the amount of so much of the lien as has accrued, was prematurely brought, and for that reason the action of the court in dismissing the complaint was correct. We conclude that the lands in question are still subject to a lien, the amount of which cannot be determined until medical care and attention and medicines are necessarily furnished to Enoch or until the reasonable amount of his funeral expenses can be determined upon his death.

At the time Leander Lindberg executed and delivered to the land bank commissioner his note, secured by a mortgage on the lands in question, the contract of support was of record and, under the law, it must be held that the mortgage is subject to the lien of the contract in so far as it provides that Enoch shall be furnished with sufficient medical care and attention and medicines so long as he shall live and with a good Christian burial after his death. *Lowrey v. Finkleston,* 149 Wis. 222, 134 N. W. 344.

*By the Court.*—The county court of Polk county is directed to modify its judgment in accordance with the opinion and then to dismiss the action because prematurely brought.