**REPUBLIC NATIONAL BANK OF DALLAS, Appellant,**

v.

**NATIONAL BANKERS LIFE INSURANCE COMPANY, Appellee.**

No. 17077.

Court of Civil Appeals of Texas.

Dallas.

March 29, 1968.

Rehearing Denied April 19, 1968.

Larry M. Lesh, of Locke, Purnell, Boren, Laney & Neely, Dallas, for appellant.

Edward J. Kolb, of Hultgren, Vaughan, Jewell, Kolb & Ivy, Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

Republic National Bank of Dallas brought this action against National Bankers Life Insurance Company asking for the recovery of damages allegedly sustained as a result of the repudiation by National Bankers Life Insurance Company of an agreement between Interstate Life Insurance Company and International Mortgage Corporation. It was alleged that National Bankers Life Insurance Company (hereinafter referred to as National Bankers) had acquired Interstate Life Insurance Company (hereinafter referred to as Interstate Life) by merger and had succeeded to all of the liabilities of such company. Republic National Bank of Dallas (hereinafter referred to as Republic) claimed that it was entitled to bring the action because it was a third-party beneficiary to the agreement between Interstate Life and International Mortgage. The trial court sustained the motion for summary judgment filed by National Bankers thereby decreeing that Republic take nothing by its cause of action.

The prime question presented by this appeal is whether, as a matter of law, Republic was such a third-party beneficiary to the contract as would justify it in maintaining an action based upon such agreement. We hold that it was not and therefore affirm the judgment of the trial court.

### FACTS

Robert L. Sonfield, Jr., attorney for International Mortgage, testified by deposition that he, on behalf of International Mortgage, contemplated obtaining a permanent loan commitment from Interstate Life; that such loan was contemplated to be closed sometime in the future and would be funded on an interim basis by some bank or other commercial lending institution. On February 2, 1965 he requested such a loan commitment from Interstate Life through its President, E. J. Stone, who advised him that they would be interested in making such a loan but would not do so unless the interim finance was funded by a commercial bank. Sonfield then contacted

Mr. George T. McGuffey, Vice-President of Republic, and requested if such bank would handle the interim financing on the commitment of Interstate Life. He testified that McGuffey gave his consent to such an arrangement. He said that McGuffey advised both him and Mr. Stone that Republic would take care of the interim financing based upon a letter of commitment. The letter of commitment, dated February 3, 1965, and which is the agreement sued upon, reads as follows: ·

"Mr. Robert W. Oldham, Vice President
International Mortgage Corporation
410 Pierce Street
Houston, Texas 77002

Re: Legal Description:
Lots Eight (8), Eleven (11), and Twelve (12), in Block Four (4), of North MacGregor Oaks, a subdivision in Harris County, Texas, according to the map thereof, recorded in Volume 998, at page 379, of the Deed Records of Harris County, Texas, SAVE AND EXCEPT 5574 square feet off the Southerly side of Lot 11 and SAVE AND EXCEPT 914 square feet off the Southerly side of Lot 12, condemned by Harris County Flood Control District.

Dear Sir:

It is with pleasure that we advise you that we have approved your request for a loan of Ninety-Two Thousand, Five Hundred ($92,500.00) Dollars. The loan is to be secured by a first and valid lien upon the captioned property.

Our commitment is subject to the following conditions:

1. The loan is to be closed 100% par.

2. The interest rate is to be 9% payable on a monthly amortized basis with maturity not to exceed five years.

3. The Deed of Trust is to provide an escrow fund for taxes and insurance. Taxes accrued but not due are to be collected at closing.

4. The Mortgagee's Title Policy is to contain no exceptions which are not approved by this company.

5. Survey of tract.

6. The loan is to carry the full personal guarantee of Thomas H. Sullivan.

7. All expenses in connection with this loan are to be paid by you.

8. We agree to close this loan on or before August 3, 1966, but not sooner than July 23, 1966. The note and mortgage will provide that interest, to be paid monthly in advance, will commence upon closing of this loan. The first installment of principal will be due September 3, 1966. As a prerequisite to our obligation to make this loan, you must notify us at least ninety days prior to the said closing date of August 3, 1966, that you do wish to avail yourself of our loan offering. Such notice must be in writing and delivered to the home office of this company at Houston, Texas by U.S. registered mail.

We acknowledge receipt of our commitment fee and this commitment is in full force and effective (sic).

ACCEPTED:
INTERNATIONAL MORTGAGE
  CORP.

By:   /s/ Robert W. Oldman
      Robert W. Oldham, Vice President

By:   /s/ Thomas H. Sullivan
      Thomas H. Sullivan, Individually"

INTERSTATE LIFE INSURANCE
  COMPANY
By:   /s/ E. J. Stone
    E. J. Stone, President

Mr. E. J. Stone, testifying by deposition, related that it was customary and normal procedure to handle loan commitments in this fashion. He said that banks do not make long term loans but do make short term advancements, or interim financing agreements, and when the permanent loan is completed the bank would receive the proceeds. He further testified that the loan from Interstate Life would be made to International Mortgage, the people who signed the commitment. McGuffey, by affidavit, described the practice of Republic and banks generally by which applicants for interim loans are required to furnish "take out commitments" from responsible lenders thus assuring a source of repayment of the interim loans. He described making the interim loan to International Mortgage and said that in doing so he acted in reliance upon the take-out commitment executed by Interstate Life. National Bankers acquired Interstate Life and all of its liabilities. National Bankers did not make the permanent loan to International Mortgage.

## OPINION

By its first point of error, and the one controlling the disposition of this appeal, appellant contends that the summary judgment evidence demonstrated genuine issues of material fact with respect to whether Interstate Life and International Mortgage incorporated into their contract a usage which thereby caused appellant to become a third-party beneficiary to the agreement and consequently the right to bring an action on such agreement.

It is an elementary rule of law that privity of contract is an essential element of recovery in an action based on contractual theory. Thus generally in order to maintain an action to recover damages flowing from the breach of a written agreement it is ordinarily a necessary prerequisite that there be a privity existing between the party damaged and the party sought to be held liable for the repudiation of the agreement. Gehl Bros. Mfg. Co. v. Price's Producers, Inc., 319 S.W.2d 955 (Tex.Civ.App., El Paso 1958); 13 Tex.Jur. 2d, Contracts, § 367, p. 643; 17A C.J.S. Contracts § 518, p. 940.

A well defined exception to the general rule thus stated is that one who is not privy to the written agreement may demonstrate satisfactorily that the contract was actually made for his benefit and that the contracting parties intended that he benefit by it so that he becomes a third-party beneficiary and eligible to bring an action on such agreement. 13 Tex.Jur.2d, Contracts, § 352, pp. 628–629; 17A C.J.S. Contracts § 519(1), p. 947, et seq.

Appellant Republic concedes that it was not privy to the written commitment agreement between International Mortgage and Interstate Life. Appellant argues that the contract, while made between two other parties, was really executed for its benefit and that the parties so intended. It also argues that parol evidence concerning usage and custom is admissible to illuminate the true intention of the parties to the written contract.

A correct resolution of this legal problem requires a restatement of and adherence to certain well established principles of law:

(1) Parties are presumed to contract for themselves and it follows that a contract will not be construed as having been made for the benefit of a third person unless it clearly appears that such was the intention of the contracting parties. Citizens Nat. Bank v. Texas & P. Ry. Co., 136 Tex. 333, 150 S.W.2d 1003 (1941); Calame v. Prudential Ins. Co. of America, 423 S.W.2d 940 (Tex.Civ.App., Waco 1968).

(2) The cardinal rule of construction as applied to all contracts is to ascertain the intention of the parties as expressed in the language used in the instrument itself. It is the intention and purpose of the contracting parties, as disclosed within the four corners of the instrument, which should control. In this connection it must be emphasized that it is not the intention

which the parties may have had, but failed to express in the instrument, but it is the intention which by said instrument they did express. Stated another way, the question is not what the parties meant to say but the meaning of what they did say. 19 Tex.Jur. 2d, Deeds, § 111, p. 401; Citizens Nat. Bank v. Texas & P. Ry. Co., supra; and Davis v. Andrews, 361 S.W.2d 419 (Tex.Civ.App., Dallas 1962, writ ref'd n. r. e.), and cases therein cited.

■ (3) Courts do not resort to arbitrary rules of construction where the intention of the parties is clearly expressed in unambiguous language. Magnolia Petroleum Co. v. Connellee, 11 S.W.2d 158 (Tex. Com.App.1928); Citizens Nat. Bank v. Texas & P. Ry. Co., supra.

■ (4) Beneficiaries of contracts to which they are not parties are divided into three classes: (a) donee beneficiaries, (b) creditor beneficiaries, and (c) incidental beneficiaries; and only those falling within the first two categories may enforce contracts made for their benefit. 17A C.J.S. Contracts § 519(4), p. 964; Edds v. Mitchell, 143 Tex. 307, 184 S.W.2d 823, 158 A.L.R. 470 (1945); Quilter v. Wendland, 387 S.W.2d 440 (Tex.Civ.App., Houston, 1st Dist. 1965, affirmed Supreme Court 403 S.W.2d 335).

■ (5) An incidental beneficiary, one who will be benefited only incidentally by the performance of the contract, cannot maintain an action thereon; an incidental beneficiary acquires, by virtue of the promise, no right either against the promisor or the promisee. 17A C.J.S. Contracts § 519 (4), pp. 971–973; Farmers State Bank v. First State Bank of Liberty, 317 S.W.2d 768 (Tex.Civ.App., Waco 1958); Mercantile Nat. Bank at Dallas v. McCullough Tool Co., 250 S.W.2d 870 (Tex.Civ.App., Austin 1952, affirmed 152 Tex. 471, 259 S.W.2d 724); Restatement of the Law, Contracts, § 147, p. 176.

(6) Where a stranger contends that it was intended that the provisions of a con-

tract should inure to his benefit such intention must be clearly apparent. If there is any doubt concerning the intent in this regard as it appears from the contract itself, such doubt should be construed against such intent. Cannon Ball Motor Freight Lines v. Grasso, 59 S.W.2d 337 (Tex.Civ.App., San Antonio 1933, affirmed Supreme Court, 125 Tex. 154, 81 S.W.2d 482), and cases therein cited; Knox v. Ball, 144 Tex. 402, 191 S.W.2d 17, 164 A.L.R. 1453 (1945).

■ (7) The law of usages and customs in its relation to contracts is usually applied in the interpretation of the agreements of the parties. It is said that the chief office of a custom is to determine the intention of the parties in connection with matters as to which the contract is not clear and explicit. But where a contract is clear and complete, new terms cannot be added by incorporating a usage or a custom. In other words, usage or custom cannot operate to vary or contradict the terms of a plain and unambiguous contract, either expressly or by implication. 58 Tex. Jur.2d, Usages and Customs, § 12, p. 36, § 14, p. 39, and § 17 pp. 42–44; Planters' Oil Co. v. Gresham, 202 S.W. 145 (Tex.Civ. App., Amarillo 1918); Dallas Cotton Mills v. Huguley, 230 S.W. 432 (Tex.Civ.App., Dallas 1921); Miller v. Gray, 136 Tex. 196, 149 S.W.2d 582, 141 A.L.R. 1237 (1941).

■ When we assimilate the undisputed facts in this case and apply them to the foregoing well established principles of law we find no difficulty in arriving at the conclusion that appellant Republic Bank does not fall within either of the categories of third-party beneficiaries to the contract in question which would enable it, as a matter of law, to institute an action thereon. We also conclude, and therefore hold as a matter of law, that the application of the law of custom and usages, as applied in its general sense, is not proper in this case.

A careful analysis of the commitment letter dated February 3, 1965 and being the written contract in question, clearly indicates that it is plain and unambiguous in its

terms. Appellant's counsel, during oral argument before this court, admitted that the contract was unambiguous. It is clearly a contract between the parties executing same. It simply provides that Interstate Life has approved the request of International Mortgage for a loan of $92,500, such loan to be secured by first and valid lien upon certain described real property and also being secured by the personal guarantee of Thomas H. Sullivan. The full description of the loan is set forth in the agreement as well as the time for closing same. There is no mention whatsoever within the four corners of this instrument of the expected distribution of the funds of the loan. It is clear that the proceeds of the loan are to be received by International Mortgage. Assuming that International Mortgage should then desire to discharge any obligation which it may have to third persons, such as appellant, such act would not be a part of the basic contract. An excellent statement of the rule demonstrating that in such case appellant Republic Bank would fall within the category of an incidental beneficiary, and therefore not entitled to bring an action on the basic agreement, is found in Restatement of the Law, Contracts, § 133:

> "9. B promises A for sufficient consideration to pay whatever debts A may incur in a certain undertaking. A incurs, in the undertaking debts to C, D and E. If, on a fair interpretation of B's promise, the amount of the debts is to be paid by B to C, D and E, they are creditor beneficiaries; if the money is to be paid to A in order that he may be provided with money to pay C, D and E, they are at most incidental beneficiaries."

The rule is clearly demonstrated in a number of interim finance cases and commitments for long term loans, especially in building cases. In Winnebago Homes, Inc. v. Sheldon, 29 Wis.2d 692, 139 N.W.2d 606 (1966), the Supreme Court of Wisconsin considered a similar situation and held that a party seeking to be held to be a third-party beneficiary was not such a one as could maintain an action on the contract between two other parties. The court said that to entitle a third person to recover upon a contract made between other parties there must not only be an intent to secure some benefit to such third party but the contract must have been entered into directly and primarily for his benefit. State Department of Public Welfare v. Schmidt, 255 Wis. 452, 39 N.W.2d 392 (1949), 11 A.L.R. 2d 1007.

In Burns v. Washington Savings, 251 Miss. 789, 171 So.2d 322 (1965), certain lending agencies failed and refused to fund a commitment to make a loan whereupon the builder of the houses in question brought an action contending that the contract between the lending agencies and the landowner was sufficiently broad to include it as a third-party beneficiary. The Supreme Court of Mississippi, in rejecting such contention pointed out, as here, that the contract in question contained no expression or words expressly including appellant (the builder) either by name or one of a specified class. The court said:

> "We find no terms used in the contract showing the intent of the parties to include appellant [builder] as a beneficiary. We find no substantial and articulate interest of the promisee in the welfare of the [builder]. * * * It is apparent, however, that they were merely incidental beneficiaries and not third party beneficiaries within the intent, terms and meaning of the contract. In the case of Hartford Acc. & Indem. Co. v. Hewes, 190 Miss. 225, 199 So. 93, 199 So. 772 (1940–1941) this Court said: 'But the controlling principle of law here involved is that one not a party to a contract can sue for a breach thereof only when the condition which is alleged to have been broken was placed in the contract for his direct benefit. A mere incidental beneficiary acquires by virtue of the contractual obligation no right against the promisor or the promisee.'"

As to the matter of custom and usage we may assume that it is true that it is a com-

mon occurrence for insurance companies and savings and loan associations to give their commitments that such companies will fund a permanent loan. While this may be true yet, in the instant case, the written commitment to make a loan was given to International Mortgage, not to Republic National Bank, and such commitment obligated Interstate Life to make a permanent loan to International Mortgage, not to Republic National Bank. Such being true it would have been erroneous for the trial court to have varied or added to the plain and unambiguous terms of the written agreement.

Finding, as we do, that appellant Republic Bank is not, as a matter of law, such a third-party beneficiary to the written contract in question as would entitle it to bring an action based upon the alleged breach thereof, we sustain appellee's counterpoint. Such action renders it unnecessary that we pass upon appellant's second and third points.

The judgment of the trial court is affirmed.