IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned On Brief March 5, 2004

## RUSKIN A. VEST, JR., ET AL. v. DUNCAN-WILLIAMS, INC.

**Direct Appeal from the Circuit Court for Maury County**
**No. 10387     Jim T. Hamilton, Judge**

---

**No. M2003-02690-COA-R3-CV - Filed May 4, 2004**

---

Plaintiffs sued Defendant alleging that Defendant was negligent, breached its fiduciary duty, and committed fraud and state securities act violations in brokering the sale of municipal bonds to plaintiffs. Defendant filed a motion to dismiss for lack of subject matter jurisdiction and improper venue based upon an arbitration agreement Plaintiffs entered into with a third party. The trial court denied Defendant's motion to dismiss and Defendant appealed. After reviewing the record, we hold that Defendant has failed to prove that it is an intended third party beneficiary of the arbitration agreement. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Allan J. Wade and Lori Hackleman Patterson, Memphis, Tennessee, for the Appellant, Duncan-Williams, Inc.

H. Naill Falls, Jr., Nashville, Tennessee, for the Appellees, Ruskin A. Vest, Jr. and Industrial Products Co., Inc.

**OPINION**

In their complaint, Ruskin A. Vest (Mr. Vest) and the company for which Mr. Vest was President, Industrial Products Company (IPC, or collectively with Mr. Vest as the Plaintiffs) alleged that Defendant, Duncan-Williams, Inc. (DWI), brokered the sale of municipal bonds to Plaintiffs. The Plaintiffs alleged that they ultimately lost the majority of their investment. Plaintiffs filed suit, alleging DWI breached its fiduciary duty, was negligent, and committed fraud, and state securities act violations by recommending and brokering the sale of these bonds when DWI knew or should have known of their enormous risk.

In response, DWI filed a motion to dismiss for lack of subject matter jurisdiction and improper venue based upon an arbitration agreement that Plaintiffs signed. In support of its motion, DWI filed a memorandum in which DWI stated that "Plaintiffs are customers of Defendant and have executed customer account agreements ("Account Agreement") with Defendant's clearing agent BNY Clearing Services LLC [(BNY)], which governs the business relationship between Plaintiffs and Defendant." Attached to the memorandum was a copy of the account agreement and an affidavit from the Senior Vice President of DWI who stated that he was familiar with Plaintiffs' accounts and that the attached was a true and exact copy of the account agreement. That agreement provides in pertinent part:

This agreement . . . sets forth the terms and conditions under which [BNY] and its subsidiaries, affiliates, agents and its and their successors and assigns will transact business with you including, but not limited to, the maintenance of your account(s) as introduced to BNYCS by your firm (your "Broker"). . . . **Your signature on the enclosed signature page will constitute your acceptance of and agreement to these terms and conditions.**

. . . .

1. CLEARING ACCOUNTS
[BNY] carries your account(s) as clearing agent for your Broker. Your Broker is an independent registered broker-dealer which has introduced your account(s) to [BNY] as clearing agent.

. . . .

25. WISCONSIN LAW TO GOVERN
THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF WISCONSIN AND SHALL BE CONSTRUED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED AND ENFORCED, IN ACCORDANCE WITH THE LAW OF THE STATE OF WISCONSIN, EXCEPT FOR WISCONSIN'S CHOICE OF LAW RULES, WHICH ARE SUPERSEDED BY THIS PARAGRAPH.

26. ARBITRATION

ARBITRATION IS FINAL AND BINDING ON THE PARTIES THERETO.

THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT (OTHER THAN REMEDIES IN AID OF OR IN CONNECTION WITH ARBITRATION), INCLUDING THE RIGHT TO A JURY TRIAL.

. . . .

YOU AGREE, AND BY MAINTAINING AN ACCOUNT FOR YOU, [BNY] AGREES, THAT ALL CONTROVERSIES ARISING (1) BETWEEN YOU AND YOUR BROKER AND ITS OFFICERS OR EMPLOYEES AND/OR (2) BETWEEN YOU AND [BNY] AND ALL PERSONS, PREDECESSORS, SUBSIDIARIES AND AFFILIATES AND ALL RESPECTIVE SUCCESSORS, ASSIGNS AND EMPLOYEES OF [BNY], WHETHER ARISING PRIOR TO, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION.

. . . .

27. NOTICE TO [BNY]
With the exception of the notice requirement set forth in paragraph 26 above, all notices or other correspondence sent by you to [BNY] shall be sent directly to:

BNY Clearing Services LLC
PO Box 2034
Milwaukee, WI 53201-9450

Attached to DWI's memorandum and the account agreement was a signature page which was signed by Mr. Vest and stated in pertinent part:

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE SET FORTH IN PARAGRAPH 26 OF THE CUSTOMER ACCOUNT AGREEMENT & DISCLOSURE DOCUMENT. BY MY SIGNATURE BELOW, I ACKNOWLEDGE THAT I HAVE READ AND AGREE TO BE BOUND BY ALL THE TERMS AND CONDITIONS OF THIS AGREEMENT AND THAT I HAVE RECEIVED A COPY OF THIS AGREEMENT.

DWI subsequently filed with the court an identical signature page signed by Mr. Vest on behalf of IPC. In its order on DWI's motion to dismiss, the trial court stated "[u]pon consideration of the briefs, affadavits, and arguments of counsel, the Court has concluded that the motion of [DWI] should be and is hereby denied." DWI timely filed its notice of appeal. Subsequently, DWI filed a motion to stay discovery in the case pending resolution of this appeal. In denying in part and granting in part DWI's motion to stay discovery, the trial court stated that "[t]he Court finds that, in the interest of justice, discovery may proceed during [DWI's] appeal, but only to the extent that it would be permitted in arbitration." DWI filed a subsequent motion to stay discovery pending appeal with this Court which we denied.

**Issue Presented**

DWI appeals and presents the following issue, as we perceive it, for our review:

_____Whether the trial court erred in denying DWI's motion to dismiss this action or compel arbitration based upon the arbitration agreement.

## Standard of Review

An agreement to "'arbitrat[e] is a matter of contract.'" *Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 84 (Tenn. 1999) (quoting *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986)). "The interpretation of a contract is a matter of law that requires a *de novo* review on appeal." *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999) (citing *Hamblen County v. City of Morristown*, 656 S.W.2d 331, 335-36 (Tenn. 1983)).

## Third Party Beneficiary

As an initial matter, we must determine whether to apply the customer service agreement's Wisconsin choice of law provision. "'Tennessee will honor a choice of law clause if the state whose law is chosen bears a reasonable relation to the transaction and absent a violation of the forum state's public policy.'" *Wright v. Rains*, 106 S.W.3d 678, 681 (Tenn. Ct. App. 2003) (quoting *Bright v. Spaghetti Warehouse, Inc.*, No. 03A01-9708-CV-00377, 1998 WL 205757, at *5 (Tenn. Ct. App. Apr. 29, 1998)(*no perm. app. filed*)). In this case, we find that Wisconsin bears a reasonable relation to the transaction because BNY is a Wisconsin corporation whose Wisconsin's address appears in paragraph twenty-seven of the account agreement. *See id.*

Under Wisconsin law, a party attempting to enforce provisions of a contract bears the burden of proving the elements of a contract. *See In re Spengler*, 596 N.W.2d 818, 825 (Wis. Ct. App. 1999). In this case, DWI is seeking to enforce the arbitration provision of BNY's account agreement as a third party beneficiary. Wisconsin law is clear that a third party may enforce the provisions of a contract "[i]f a contract is entered into 'directly and primarily' for the benefit of third parties." *State ex rel. Journal/Sentinel, Inc. v. Pleva*, 445 N.W.2d 689, 692 (Wis. Ct. App. 1989) (citing *Winnebago Homes, Inc. v. Sheldon*, 139 N.W.2d 606, 609 (Wis. 1966)). In this case, while the arbitration agreement provides that "YOU AGREE, AND BY MAINTAINING AN ACCOUNT FOR YOU, [BNY] AGREES, THAT ALL CONTROVERSIES ARISING (1) BETWEEN YOU AND YOUR BROKER . . . SHALL BE DETERMINED BY ARBITRATION," the record contains no evidence, other than the arbitration agreement's boilerplate language, that Plaintiffs and BNY entered into the account agreement "directly and primarily" for the benefit of Plaintiff's broker, DWI. *Id.*

While we have found no Wisconsin law on point with the facts of this case, federal courts have applied a similar intended third party beneficiary analysis as Wisconsin courts in determining whether an introductory broker is a third party beneficiary of an arbitration agreement entered into by a clearing broker and customer. *Compare Sheldon*, 139 N.W.2d at 609, *Elec. Appliance Co., v. United States Fid. & Guar. Co.*, 85 N.W. 648, 650 (Wis. 1901), *and Pleva*, 445 N.W.2d at 692 *with Whisler v. H.J. Meyers & Co.*, 948 F. Supp. 798, 801 (N.D. Ill. 1996) *and Ziegler v. Whale Sec. Co.*, 786 F. Supp. 739, 742-43 (N.D. Ind. 1992). In *Ziegler*, the

customer and clearing broker entered into an arbitration agreement which provided that "[t]he . . . arbitration provision[] shall be applicable to all matters between such other broker-dealer and me." *Zeigler*, 786 F. Supp. at 741. In determining whether the customer's introducing broker could enforce that clause as an intended third party beneficiary, the court looked to the contracting parties understanding of the three-party relationship. *Id*. at 742-43. The court found three documents as proof of the contracting parties' understanding of the relationship in determining that the introducing broker was a third party beneficiary. *Id*. at 743. In addition to the arbitration agreement itself which did not refer to the specific name of the introductory broker, the court relied upon two other documents which specifically named and outlined the nature of the relationship. *See id*. The court held that "[w]hile it is true that some courts will not find one to be a third-party beneficiary absent specific reference to such party in the arbitration clause or agreement in question, . . . this Court finds that *under these circumstances*, the [introductory broker] need not be specifically named in the arbitration clause." *Id*. (emphasis added).

In this case, the arbitration provision does not specifically name DWI as the broker and the only piece of evidence on which DWI can rely as proof of the contracting parties understanding of the three party relationship is that contained in DWI's memorandum in support of its motion to dismiss. The memorandum provides that "Plaintiffs are customers of [DWI] and have executed customer account agreements ("Account Agreement") with Defendant's clearing agent BNY Clearing Services LLC, which governs the business relationship between Plaintiffs and [DWI]." This, without further proof, does not show the contracting parties', Plaintiffs' and BNY's, understanding of the relationship for this Court to determine that Plaintiffs and BNY intended DWI to be a third party beneficiary. Accordingly, we affirm the decision of the trial court to deny DWI's motion to dismiss.

## Conclusion

In light of the foregoing, we affirm the decision of the trial court to deny DWI's motion to dismiss. Costs of this appeal are taxed to the Appellant, Duncan-Williams, Inc., and its surety, for which execution may issue if necessary.

 

 

_____
DAVID R. FARMER, JUDGE